UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

```
_____
JILLIAN KERN (f/k/a FRANCIA),   )
     Plaintiff                   )
                                 )
v.                               )     Docket No.
                                 )
WILCOX INDUSTRIES CORPORATION)
and JAMES WILCOX TEETZEL,        )
     Defendants                  )
_____  )
```

## VERIFIED COMPLAINT

**NOW COMES** the plaintiff, Jillian Kern, by and through her attorneys, Hamblett & Kerrigan, PA, and complains against the defendants as follows:

**I.   PARTIES**

1. The plaintiff, Jillian Kern (f/k/a Francia) (hereinafter "Kern") at all relevant times throughout her employment with Wilcox she was single and therefore had her maiden name Francia, is a Washington citizen who resides at 11021 Park Avenue South, Apt. E 204, Tacoma, Washington 98444.

2. The defendant Wilcox Industries Corporation (hereinafter "Wilcox") is a New Hampshire corporation with a principal place of business located at 25 Piscataqua Drive, Newington, New Hampshire 03801.

3. The defendant, James Wilcox Teetzel (hereinafter "Teetzel"), is a Maine citizen who, upon information and belief, maintains a residence at 74 Southside Road in York, Maine 03909.

## II. SUBJECT MATTER JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f),(3) and 28 U.S.C. § 1367(a).

## III. PERSONAL JURISDICTION

5. This Court may exercise personal jurisdiction over all defendants as the acts complained of occurred in the state of New Hampshire, or they maintain a place of business in New Hampshire.

## IV. VENUE

6. Venue lies in this Court as one of the defendants maintains its place of business in this judicial district. In addition, the acts that give rise to this lawsuit occurred in this jurisdictional district.

## VI. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. Wilcox is manufacturing firm based which employs approximately one hundred fifteen (115) people.

8. Teetzel is Wilcox's chief executive officer. He is also the sole officer and director of Wilcox. "Wilcox" is Teetzel's middle name.

9. Teetzel's wife, Laurie Teetzel, has the title of Vice President of the company and Teetzel's sister-in-law carries the title of Human Resource Manager. Neither is a formal officer of the company.

10. Kern is currently twenty (20) years old.

11. In 2006, Kern (who was then eighteen (18) years old) was employed as a waitress at the Smokey Bones Restaurant in Newington, New Hampshire.

12. The Smokey Bones is located near the Wilcox facility and is frequently visited by Wilcox employees including Teetzel.

13. Kern had just graduated from high school and was contemplating starting community college.

14. While serving lunch in 2006, Teetzel inquired with Kern as to her future career plans.

15. When he heard that she planned to go to a community college, Teetzel informed Kern that she did not need to go to college, and instead, could come to work in the marketing division at Wilcox.

16. At the conclusion of the conversation, Teetzel left Kern a $50 gratuity on a total lunch bill of approximately $80.

17. Kern subsequently contacted Teetzel and accepted a position with Wilcox. Her first day of work was February 26, 2007.

18. Though Kern was told previously by Teetzel that she was being hired for a marketing position, Teetzel informed Kern before her employment began that the company needed to immediately, temporarily fill the receptionist position. Kern then agreed to work as the company receptionist.

19. Teetzel knew that Kern did not have a lot of money and could not afford to purchase a professional wardrobe. Therefore, Teetzel gave Kern $300 to obtain clothing for work.

20. Teetzel is approximately forty six (46) years old. Kern believed that he had a very commanding presence and "exuded power."

21. Kern is petite and appears quite young and, on a number of occasions, Wilcox visitors believed she was Laurie Teetzel's daughter because she looked like a younger version of Laurie Teetzel.

22. In March of 2007, Kern went on a weekend trip to Canada. Teetzel gave her $300 when she left and another $350 when she returned.

23. Approximately one (1) month later, in April of 2007, Teetzel was leaving on a business trip. He asked Kern whether she was going to miss him, to which Kern responded "oh yeah." When Teetzel asked if she was being sarcastic, Kern replied nervously "no."

24. In response, Teetzel informed her that he would miss her and that he wanted a kiss from Kern upon his return. Kern, feeling embarrassed and pressured, agreed.

25. When he returned from his trip, Teetzel went to Kern's desk and informed her that he was ready for his kiss. He then took Kern into a unisex bathroom and kissed her on the lips.

26. Thereafter Teetzel would find opportunities to be alone with Kern. Teetzel would not only kiss Kern, but groped her breasts by placing his hands under her blouse and bra. Teetzel also on several occasions reached into Kern's pants, but Kern would physically prevent further such acts.

27. During this period of time, Teetzel continued to inform Kern that she was working her way up to a marketing position.

28. Kern felt humiliated by Teetzel's behavior. She informed him that she believed he was cheating on his wife. Kern's emotional turmoil was heightened

because Teetzel's wife was undergoing breast cancer treatment during the same time period that Teetzel was groping Kern's breasts.

29. Teetzel not only continued his groping and kissing, but also discussed his wife's cancer treatment while at the same time complimenting Kern on her physical attributes. He also continued to ply Kern with cash gifts.

30. Kern was using some of the extra monies to pay for her braces. Teetzel thereafter had commented that he liked her braces because they made her look younger.

31. Teetzel also took Kern to the second floor of a manufacturing area that was equipped with bedrooms to accommodate some visiting German arms manufacturers.

32. Teetzel informed Kern that he hoped that, one weekend, they could spend the night together in one of those beds.

33. In August of 2007, Teetzel while in conference room with Kern placed Kern's hand on Teetzel's crotch and she pulled her hand away.

34. In August of 2007, Kern learned that there was no marketing position for her at Wilcox.

35. In August of 2007, Kern asked for time off to go on a family vacation to Maine.

36. Teetzel refused, and informed Kern that she had not worked at the company long enough for such a vacation.

37. When Kern broke down in tears, Teetzel informed her that she needed to release her stress. Teetzel's suggested solution was for him to perform oral sex on Kern, asserting that he was very good at it.

38. Kern declined Teetzel's request, went on the family vacation, never returned to work, and resigned from her position on August 17, 2007.

39. Prior to leaving her position with Wilcox, Kern had no opportunity to complain about Teetzel's repeated sexual acts.

40. Wilcox has no sexual harassment policy. Instead, it only had posters in the manufacturing area which indicate that sexual harassment can result in discipline.

41. Kern could not report Teetzel's actions to the Human Resource Manager as that woman was the sister of Teetzel's wife upon whom he was cheating by committing the sexual acts on Kern.

42. Kern was aware that, prior to her arrival, Teetzel's former secretary had been terminated because Teetzel's wife believed she was having an affair with her husband. Kern reasonably believed that reporting Teetzel's conduct to the human resource manager would result in her termination.

43. Teetzel's conduct was predatory grooming wherein he hoped to manipulate Kern into sexual acts to fulfill his hedonistic fantasies.

44. Kern filed a Charge of Discrimination with New Hampshire Human Rights Commission on October 26, 2007. This resulted in a simultaneous filing with the Federal Equal Employment Opportunities Commission.

45. On January 8, 2009, Kern received a right to sue letter from the U.S. Equal Employment Opportunity Commission.

## VII. CAUSES OF ACTION

### A. Count I - Violation of 42 U.S.C. §2000e-2(a)(1) – Hostile Environment Sexual Harassment (against Wilcox)

46. Kern repeats and incorporates the allegations set forth in paragraphs 1 through 45.

47. Kern is female and a member of a "protected class."

48. Kern was subject unwelcome sexual harassment which included, but was not limited to, kissing and groping of her breasts, and a request for oral sex.

49. Teetzel's sexual acts were made entirely because Kern is female.

50. Teetzel's sexual harassment was sufficiently severe and pervasive so that it altered the conditions of Kern's employment. For example, and without limitation, Kern found that she was subjected to near daily requests by Teetzel for kisses. Teetzel took every opportunity to be alone with Kern so he could kiss and grope her breasts and on occasion would place his hand inside her pants.

51. Kern was offended by Teetzel's sexual harassment in that she felt embarrassed and humiliated. She eventually quit her job after Teetzel admitted she would not have a marketing position, and offered to perform oral sex upon her.

52. Teetzel's sexual harassment was sufficiently disturbing to offend an objectively reasonable person.

53. As a direct and foreseeable result of Teetzel's conduct, the plaintiff suffers, and continues to suffer, damage including, but not limited to, lost wages, lost income, lost employment opportunities, severe emotional distress, and other compensable damages.

### B.     Count II  -   Violation of 42 U.S.C. §2000e-2(a)(1) – Quid Pro Quo Sexual Harassment (against Wilcox)

54.     Kern repeats and incorporates the allegations set forth in paragraphs 1 through 53.

55.     Kern is female and a member of a "protected class."

56.     Kern was subject unwelcome sexual harassment which included, but was not limited to kissing, groping of her breasts, placing his hand in her pants, and a request for oral sex.

57.     Teetzel's sexual comments were made entirely because Kern is female.

58.     Kern's submission to Teetzel's sexual advances was a condition of a tangible job benefit and her refusal to submit to these advances would have resulted in tangible harm.

59.     Specifically and without limitation, Kern was hired by Teetzel with the representation by Teetzel that she would have a career in the marketing division of Wilcox.  Teetzel instead, asked her to work as the company receptionist.

60.     During her time as receptionist, Teetzel, while kissing and groping her, informed her that she was making progress towards a marketing position.

61.     Teetzel was the company president and sole officer.  Kern reasonably believed that Teetzel had the sole authority to decide whether she would get a marketing position.  Kern reasonably believed that, had she refused to comply with Teetzel's advances, she would not receive a marketing position or would be terminated.

62.     As a direct and foreseeable result of Teetzel's conduct, the plaintiff suffers, and continues to suffer, damage including, but not limited to, lost wages, lost

income, lost employment opportunities, severe emotional distress, and other compensable damages.

### C.     Count III – Violation of RSA 354-A:7 (against Wilcox)

63. Kern repeats and incorporates the allegations set forth in paragraphs 1 through 62.

64. RSA 354-A:7 prohibits any employer from discriminating against an employee based upon their sex.

65. Wilcox violated this statute when Teetzel subjected Kern to repeated unwelcome sexual advances including, but not limited to, kissing, groping, placing his hand inside her pants, and a request for oral sex.

66. As a direct and foreseeable result of Teetzel's conduct, the plaintiff suffers, and continues to suffer, damage including, but not limited to, lost wages, lost income, lost employment opportunities, severe emotional distress, and other compensable damages.

### D.     Count IV – Intentional Infliction of Emotional Distress (against Teetzel)

67. Kern repeats and incorporates the allegations set forth in paragraphs 1 through 66.

68. Teetzel engaged in extreme and outrageous conduct in that he, amongst other things, predatorily groomed Kern, and as a result of that grooming repeatedly kissed and groped Kern, propositioned her for sex, and made sexual explicit comments about her anatomy.

69. As a direct and foreseeable result of Teetzel's conduct, the plaintiff suffers, and continues to suffer, damage including, but not limited to, lost wages, lost

income, lost employment opportunities, severe emotional distress, and other compensable damages.

## VIII. DEMAND FOR JURY TRIAL

70.  The plaintiff requests a jury trial.

**WHEREFORE**, the plaintiff respectfully requests that this Court:

A.  Schedule this matter for a jury trial;

B.  Award the plaintiff reasonable compensation for her damages, including punitive damages as allowed by statute, attorney's fees, interest and costs; and

C.  Grant such other and further relief that may be just and proper

## VERIFICATION

I, **JILLIAN KERN**, do hereby state under oath that the facts contained in this Verified Complaint are true to the best of my knowledge and belief.

DATED: March 4, 2009                    /s/ Jillian Kern
                                        **JILLIAN KERN**

STATE OF  Washington
COUNTY OF  Pierce         SS.

Personally appeared, before me, the above named **JILLIAN KERN** (f/k/a Francia), who made oath that the within and foregoing statements are true to the best of her knowledge and belief.

DATED: March 4, 2009                    /s/ Dana M. Robinson
                                        **NOTARY PUBLIC**
                                        My Commission Expires:
                                                   03/05/2010

                                                  Respectfully submitted,
                                                  **JILLIAN KERN**
                                                  By Her Attorneys,
                                                  **HAMBLETT & KERRIGAN, PA**

DATED: March 6, 2009               By:   /s/ J. Daniel Marr
                                                  **J. DANIEL MARR, ESQUIRE**
                                                  N.H. Bar No. 4091
                                                  146 Main Street
                                                  Nashua, NH  03060
                                                  (603) 883-5501